```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT BLUEFIELD
```

MCDOWELL PHARMACY, INC.;
ROBERT BROWN;
JOHNSTON AND JOHNSTON, INC.;
PATRICIA JOHNSTON;
T & J ENTERPRISES, INC.;
JOSEPH C. MCGLOTHLIN;
GRIFFITH & FEIL DRUG, INC.;
RICKEY W. GRIFFITH;
WATERFRONT FAMILY PHARMACY, LLC;
KARL SOMMER;
MCCLOULD FAMILY PHARMACY, INC.;
and KEVIN MCCLOUD,

    Plaintiffs,

v.                                         Civil Action No. 1:11-cv-0606

WEST VIRGINIA CVS PHARMACY, L.L.C.;
DENNIS CANADAY;
ROBERT TAYLOR;
ALLISON DINGER;
AARON STONE;
CVS CAREMARK CORPORATION;
CVS PHARMACY, INC.;
CAREMARK RX, L.L.C.;
and CAREMARK, L.L.C.;

    Defendants.

### MEMORANDUM OPINION AND ORDER

On September 8, 2011, this case was removed from the Circuit Court of McDowell County, West Virginia to the United States District Court for the Southern District of West Virginia.  Pending before the court is the Plaintiffs' Motion to Remand the case to the Circuit Court (Doc. No. 20).  For the

reasons set forth below, the Plaintiff's Motion to Remand is **GRANTED**.

## I. Background

On August 9, 2011, Plaintiffs McDowell Pharmacy, Inc., Robert Brown, Johnston and Johnston, Inc., Patricia Johnston, T & J Enterprises, Inc., Joseph C. McGlothlin, Griffith & Feil Drug, Inc., Rickey W. Griffith, Waterfront Family Pharmacy, LLC, Karl Sommer, McCloud Family Pharmacy, Inc., and Kevin D. McCloud ("Plaintiffs") filed a complaint in the Circuit Court of McDowell County, West Virginia. Each Plaintiff is a West Virginia Citizen (See Doc. No. 1 at p. 4). The Plaintiff pharmacies each have individual contracts with Caremark, LLC, and operate in an area included in at least one pharmacy network operated by Caremark Corporation. Named as Defendants are West Virginia CVS Pharmacy, LLC, Dennis Canaday, Robert Taylor, Allison Dinger, Aaron Stone, CVS Caremark Corporation, CVS Pharmacy, Inc., Caremark RX, LLC, and Caremark, LLC. The Individual Defendants Robert Taylor, Allison Dinger, Dennis Canaday, and Aaron Stone are each Pharmacists-in-Charge ("PIC") of a CVS pharmacy that operates in West Virginia.[1] (Doc. No. 1 at p. 7). CVS Caremark Corporation is a Delaware corporation; CVS Pharmacy, Inc. is a Rhode Island corporation; Caremark RX,

---

[1] The PIC Defendants are residents of West Virginia, and are, for purposes of determining diversity jurisdiction, considered to be non-diverse defendants.

LLC, is a Rhode Island corporation,[2] and Caremark LLC is a Rhode Island corporation.[3] (Doc. No. 1 at p. 6).

The Defendants filed a timely notice of removal pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, removing the case to this court. (Doc. No. 1). Despite the fact that the PIC Defendants are residents of West Virginia, and therefore non-diverse defendants, the removing defendants contend that this court has jurisdiction to adjudicate the instant matter pursuant to 28 U.S.C. § 1332(a)(1) (diversity of citizenship). Id. In support of this, the removing defendants argue that the PIC defendants were fraudulently joined, and urge the court to disregard the PIC Defendants' West Virginia residency, assume jurisdiction, dismiss the PIC Defendants, and thereby retain jurisdiction. (Id.). The Plaintiffs timely moved to remand the case to state court. (Doc. No. 20).

The Plaintiffs' claims arise out of the fact that Defendant Caremark, among other aspects of its business, offers pharmacy benefit management ("PBM") services to insurers, third party

---

[2] The Plaintiffs seem to incorrectly state that Defendant Caremark Rx, LLC is a Delaware corporation. The Defendants assert that Defendant Caremark Rx's sole member is CVS Pharmacy, Inc. which would make Caremark Rx a citizen of Rhode Island. This dispute does not affect diversity.
[3] There is a dispute over Caremark LLC's citizenship. The Defendant asserts that Caremark LLC's sole member is Caremark Rx, LLC, which is a Rhode Island corporation with its principal place of business in Rhode Island. The Plaintiff asserts that it is a California corporation. This dispute does not affect diversity.

administrators and employer sponsors of group health plans. (Doc. No. 8 at p. 4). Caremark offers its PBM clients services including the administration and maintenance of pharmacy networks. Id. The pharmacy providers included in such networks agree by contract to fill prescriptions for participants in Caremark's clients' PBM plans at discounted prices. Id.

The Plaintiffs allege that the Defendants "entered into a scheme and design to intentionally and unlawfully take plaintiffs' customers, interfere with plaintiffs' customer relationships and secure plaintiffs' customers for themselves by unlawful and tortious means." (Doc. No. 1, Exhibit A, "Complaint" p. 3). All claims alleged in the complaint arise out of the fact that the Defendants allegedly "tell West Virginia residents that they must consult and purchase their drugs from a CVS pharmacy or through a CVS mail order pharmacy, thus forcing West Virginia citizens to consult and purchase their drugs from defendants in order to be reimbursed under the customer's own insurance." Id. at p. 5.

Count I seeks injunctive relief under W. Va. Code § 30-5-7 to "restrain and enjoin the WV CVS and CVS PIC defendants and other defendants from participating with them in violating the explicit provisions of W.Va. Code § 30-5-7 and thereby causing them harm by advising plaintiffs' customers that they cannot purchase their prescription drugs if they are to receive their

insurance reimbursement." (Complaint at p. 18). Count II alleges violations of W.Va. Code § 30-5-7 & 23 and § 33-16-3q. Count III alleges Tortious Interference with the Plaintiffs' business expectations against the Defendants. (Id. at p. 23). Count IV alleges fraud. (Id. at p. 24). Count V alleges restraint of trade in violation of W. Va. Code § 47-18-3, a section entitled "contracts and combinations in restraint of trade." In support of this claim, the Plaintiffs state: "Defendants have and continue to enter into contracts with numerous insurers and persons, firms or corporations which provide insurance prescription reimbursements to citizens of West Virginia, and which violate the provisions of W.Va. Code §§ 33-16-3q, 47-18-3 and 30-5-7 by defendants, as contractors and/or administrators of prescription drug benefits, and by and through their pharmacists and pharmacies participating in legend prescription drugs plans, all of which has proximately caused and is causing each plaintiff to be damaged by losing customers and sales of prescription drugs in their specific market areas and vicinity." (Id. at p. 26).

The Defendants argue that the PIC Defendants were fraudulently joined to defeat diversity, that the non-diverse Defendants should be dismissed, and that complete diversity exists between the parties. In response, the Plaintiffs allege that the arguments for dismissal of the PIC Defendants are

actually defenses common to all defendants, and that the Defendants fail to meet the standard of fraudulent joinder.

## II.  Standard of Review

Civil actions brought in state court may only be removed to federal court if the federal court has "original jurisdiction" over the action.  28 U.S.C. § 1441(a)(2000).  For purposes of the current matter, "original jurisdiction" exists where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.  See id. § 1332(a)(1).  The phrase "between citizens of different states" has been interpreted as requiring "complete diversity," i.e., the citizenship of each plaintiff must be diverse from the citizenship of each defendant. Caterpillar Inc., v. Lewis, 519 U.S. 61, 68 (1996).

One exception to the "complete diversity" rule is the judicially created doctrine of fraudulent joinder.  Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999)(citing Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998)). The fraudulent joinder doctrine[4] allows a district court to disregard, for jurisdictional purposes, the citizenship of

---

[4] The term "fraudulent joinder" is a bit misleading, as the doctrine demands neither a showing of fraud nor a showing of joinder.  Cobb v. Delta Exp., Inc., 186 F.3d 675, 677 (5th Cir. 1999).  For clarity's sake, however, the court will continue to use the widely accepted terminology.

certain nondiverse defendants, assume jurisdiction over a case, dismiss the non-diverse defendants, and thereby retain jurisdiction. Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999)(citing Marshall v. Manville Sales Corp., 6 F.3d 229, 232-33 (4th Cir. 1993)). The rigor of the fraudulent joinder standard has been described as "draconian." Fleming v. United Teachers Associates Ins. Co., 250 F.Supp. 2d 658, 662 (S.D.W.Va. 2003).

There are two ways to show fraudulent joinder: "the removing party must demonstrate either outright fraud in the plaintiff's pleading of jurisdictional facts or that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." Hartley, 187 F.3d at 424.

> The party alleging fraudulent joinder bears a heavy burden-it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor. This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See e.g., Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992)(inquiry into validity of complaint is more searching under Rule 12(b)(6) than when party claims fraudulent joinder).

Id. at 424. The Fourth Circuit has carefully scrutinized fraudulent joinder cases:

> In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve these various uncertain questions of law and fact. Allowing

> joinder of the [non-diverse] defendants is proper in
> this case because courts should minimize threshold
> litigation over jurisdiction. Jurisdictional rules
> direct judicial traffic. They function to steer
> litigation to the proper forum with a minimum of
> preliminary fuss. The best way to advance this
> objective is to accept the parties joined on the face
> of the complaint unless joinder is clearly improper.
> To permit extensive litigation of the merits of a case
> while determining jurisdiction thwarts the purpose of
> jurisdictional rules.

Id. at 424. The fraudulent joinder doctrine focuses on the propriety of the joinder of the claims against the non-diverse defendant rather than the merits of the claims against all defendants. See Chesapeake & Ohio Ry. V. Cockrell, 232 U.S. 146 (1944). And the standard has been described as even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Hartley, 187 F.3d at 424.

### III. Discussion

The Defendants argue that the non-diverse PIC Defendants were fraudulently joined and should be dismissed because there is not a "glimmer of hope" or any possibility that the Plaintiffs could assert a viable claim against any of them. See Hartley v. CSX Transp., Inc., 187 F.3d 422, 426 (4th Cir. 1999); See also Doc. No. 5 at p. 2). The Defendants first argue that West Virginia § 30-5-7, the basis for Count I and Count II of the complaint, affords no basis for relief because there is no

private right of action in the statute. (Doc. No. 1 at pp. 8-9).[5]
Second, the Defendants argue that W.Va. Code § 33-16-3q applies only to "insurers," and also states no private cause of action.[6] The Defendants further argue that the Plaintiffs do not make a claim for tortious interference specifically, and that the fraud claim was not pled with sufficient specificity. Similarly, the Defendants argue that there is no claim under the West Virginia Consumer Credit Protection Act, W. Va. Code § 46-A-101 because

---

[5] W. Va. Code 30-5-7 states in relevant part:
  [T]he board shall have the power to withhold, revoke or suspend any license or any certificate issued under this article or to penalize or discipline. . . any person who has:
  (8) agreed to participate in a legend drug product conversion program promoted or offered by a manufacturer, wholesaler, or distributor of such product for which the pharmacist or pharmacy received any form of financial renumeration, or agreed to participate in a legend drug program in which the pharmacist or pharmacy is promoted or offered as the exclusive provider of legend drug products or whereby in any way the public is denied, limited, or influenced in selecting pharmaceutical service or counseling.

[6] W.Va. Code § 33-16-3q states:

**Required use of mail-order pharmacy prohibited.**
(a) An insurer issuing group accident and sickness policies in this state pursuant to the provisions of this article may not require any person covered under a contract which provides coverage for prescription drugs to obtain the prescription drugs from a mail-order pharmacy in order to obtain benefits for the drugs.
  (b) An insurer may not violate the provisions of subsection (a) of this section through the use of an agent or contractor or through the action of an administrator of prescription drug benefits.
  (c) The insurance commissioner may propose rules for legislative approval in accordance with the provisions of article three, chapter twenty-nine-a of this code to implement and enforce the provisions of this section.

the Plaintiffs are not consumers as defined within the Act. Finally, the Defendants state that the Pharmacists, as agents of CVS, cannot be held liable for the acts performed within the scope of their authority.

The Plaintiffs respond that these arguments are "common defenses" to all Defendants, and as such, are not to be considered in a fraudulent joinder analysis. See Smallwood v. Illinois Cent. R. Co., 385 F.3d 568 (5th Cir. 2004)(Where only showing made by diverse defendant for fraudulent joinder equally disposed of plaintiff's state law claims against diverse defendant, there was no improper joinder of in-state defendant).

The first issue to be resolved is whether the court should adopt the common defense rule. The genesis of the common defense rule is arguably the Supreme Court's decision in Chesapeake & Ohio Railway Co. v. Cockrell, 232 U.S. 146 (1914).[7] That case involved a Kentucky citizen who died in a railroad accident. The administrator of his estate sued the railroad company, a citizen of Virginia, as well as the engineer and fireman who had been operating the train, citizens of Kentucky, in state court. The railroad company removed the case to federal court, arguing that the non-diverse engineer and fireman had been fraudulently joined because the evidence showed that they

---

[7] As the Defendants point out, the Supreme Court does not use the terminology of "common defense rule," but does recognize an exception to the fraudulent joinder doctrine generally.

had not acted negligently, and thus the plaintiff could not recover against them. Id. at 149-50, 153. The Court rejected that argument. Because the railroad company's argument for fraudulent joinder, if accepted, would have defeated the plaintiff's claims against all of the defendants, not just the non-diverse ones, the Court held that "the showing manifestly went to the merits of the action as an entirety, and not to the joinder." Id. at 153. Stated differently, because the argument "indicated that the plaintiff's case was ill founded as to all the defendants," it did not "compel the conclusion" that the non-diverse defendants "were wrongfully brought into a controversy which did not concern them." Id.

The Fifth Circuit was the first circuit to adopt the common defense rule, and it has since been utilized by district courts in the First, Sixth, Eleventh and Fourth Circuits. See, e.g. In re New England Mut. Life Ins. Co. Sales Practices Litig., 324 F.Supp 2d 288 (D. Mass. 2004); Feldman v. AXA Equitable Life Ins. Co., 2009 WL 2486899, *4 n.6 (S.D. Ga. 2009); McGinty v. Player, 396 F.Supp. 2d 593, 598, 601 (D. Md. 2005); Smith v. SmithKline Beecham Corp. 2011 WL 2731262, 4 (E.D. Ky. 2011). And the Seventh Circuit, in an opinion by Judge Posner, has recognized the common defense rule as an "exception" to fraudulent joinder (which itself is an exception to the complete diversity requirement). Walton v. Bayer Corp., 643 F.3d 994,

1001(7th Cir. 2011)("A plaintiff can defeat the fraudulent-joinder exception to the requirement of complete diversity of citizenship by proving that his claim against the nondiverse defendant is no weaker than his claim against the diverse defendants"). Under this rule, removal of a state claim is impermissible when the legal theory upon which the defendant's claim of fraudulent joinder is predicated is a common defense that equally disposes of all defendants to the suit.

The Defendants here do not attempt to show "outright fraud" in the joinder of the PIC-Defendants; rather, they attempt to show that the Plaintiffs have no chance of recovery against the PIC Defendants. As one district court has stated about such an argument:

> If the plaintiff has no hope of recovering against the non-diverse defendant, the court infers that the only possible reason for the plaintiff's claim against him was to defeat diversity and prevent removal. When, however, the plaintiff's claims against the non-diverse defendant fail for the same reason that his claims against the other defendants fail, the no-possibility-of-recovery inquiry no longer functions as a proxy for fraudulent intent. Instead, it merely demonstrates that "the plaintiff's case [is] ill founded as to all the defendants," Cockrell, 232 U.S. at 153—a quintessential merits determination that belongs in the state court.

See Smith v. SmithKline Beecham Corp., 2011 WL 2731262 (E.D. Ky., 2011). The court has found no circuits that have rejected the common defense rule when squarely presented with it, and the Defendants point to none.

Perhaps most importantly, the reasoning behind the common defense doctrine—preserving the limited jurisdiction of federal courts—is certainly in line with the Fourth Circuit's recent cases on the doctrine of fraudulent joinder and the federalism issues it raises. See, e.g., Maryland Stadium Auth. v. Ellerbe Becket, Inc., 407 F.3d 255, 260 (4th Cir. 2005)("We are obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated"). For example, the court has reaffirmed that doubts about the propriety of removal should be resolved in favor of remanding the case to state court. Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004)(en banc). Our court of appeals has repeatedly stated that courts should minimize threshold litigation over jurisdiction. See Hartley, 187 F.3d at 425; Dixon, 369 F.3d at 816; Maryland, 407 F.3d at 260.

Because the court adopts the common defense rule as in line with Fourth Circuit precedent, the court next finds that the common defense rule supports remand in this case. Applying the common defense rule to the Defendants' first argument, that W. Va. Code § 30-5-7, the basis for Count I and Count II of the complaint, affords no basis for relief because there is no private right of action in the statute, shows the importance of the common defense exception to the fraudulent joinder doctrine. The Defendants' argument, if accepted, would conclusively

establish that the Plaintiffs have no cause of action against <u>any</u> of the Defendants on Counts I and II.  The arguments are an attack on the merits of the Plaintiffs' claims as a whole, not on the propriety of the non-diverse defendants' joinder.  All but one of the Defendants' other arguments are similarly common to all Defendants.  For example, Defendants next argue that W.Va. Code § 33-16-3q, the basis for Counts II and V, applies only to "insurers," and also states no private cause of action.  Again, if accepted as true, the claim would bar all possible liability under that statute.  The Defendants further argue that the Plaintiffs do not make a claim for tortious interference specifically, and that the fraud claim was not pled with sufficient specificity.  Although it may well be true that the Plaintiffs have not been specific enough in their pleadings, if these parts of the claim are weak, they are weak to all Defendants, not simply the PIC Defendants.

  Similarly, the Defendants argue that there is no claim under the West Virginia Consumer Credit Protection Act ("WVCCPA"), W. Va. Code § 46-A-101 because the Plaintiffs are not "consumers" as defined within the Act. Whether or not the Plaintiffs are consumers under the WVCCPA is a determination that would preclude the Plaintiffs recovery against all of the Defendants; thus, this too, is a defense common to all the Defendants.

The sole argument that is substantially specific to the PIC Defendants merits further discussion from the court. (See Doc. No. 30, p. 17). The PIC Defendants argue that they cannot be liable because they are agents acting within the scope of their agency for a disclosed principal. Citing a West Virginia case, the Defendants state that the agent of a disclosed principal is not liable in damages for actions taken by him on behalf of his principal within the scope of his authority. Hoon v. Hyman, 105 S.E. 925, 926 (W. Va. 1921). As this court has previously noted, duly licensed insurance agents acting within the scope of their employment may not be sued in their individual capacity in tort or in contract. Fleming v. United Teachers Associates, Ins. Co., 250 F.Supp. 2d 658, 662 (S.D. W. Va. 2003). This holding, however, is applied specifically to insurers and insurance contracts. See Hurricane Milling Co. v. Steel & Payne Co., 84 W. Va. 376 91919); Benson v. Continental Ins. Co., 120 F.Supp. 2d 593, 595 (S.D. W. Va. 2000). As such, this claim does not warrant dismissal of the PIC defendants, nor does it show that the Plaintiffs have not a glimmer of hope in recovering against the PIC defendants specifically. If the Plaintiffs' case is weak and ill-founded, it is equally weak and ill-founded as to all Defendants.

Finally, the court rejects the Defendants' contention that application of the common defense rule leads to an absurd result

in this case. The PIC Defendants are not just non-diverse defendants with "no real connection with the controversy." Wilson, 257 U.S. at 97. As the Plaintiffs note, West Virginia pharmacies are required to designate one licensed pharmacist as the pharmacist-in-charge. W. Va. Code § 30-5-14(d). So designated, the PIC Defendants have specific responsibility for "direction and supervision" of the pharmacy "at all times." W. Va. Code § 30-5-14a(a). This responsibility expressly includes responsibility "for the pharmacy's compliance with state and federal pharmacy laws." W. Va. Code § 30-5-14a(b). Thus, the PIC Defendants' are closely connected with the controversy and any violations of state law the Plaintiffs allege. If customers were told that they must purchase their prescriptions from CVS stores to receive the full benefit of their insurance plans, as Plaintiffs allege, the PIC Defendants were among the pharmacists who allegedly told customers this. There is at least some possibility that the Plaintiffs may recover against or enjoin the PIC Defendants from the alleged acts.

### IV. Conclusion

Because the Defendants have not succeeded in demonstrating that the PIC Defendants were fraudulently joined for the purpose of defeating diversity, this court lacks jurisdiction. It is therefore **ORDERED** as follows:

(1) The Plaintiff's Motion to Remand (Doc. No. 20) is **GRANTED**; and

(2) This case is **REMANDED** back to the Circuit Court of McDowell County.

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record, and a certified copy to the Circuit Court Clerk of McDowell County.

**IT IS SO ORDERED** on this 14th day of June, 2012.

ENTER:

*David A. Faber*
David A. Faber
Senior United States District Judge